Filed 5/28/26  P. v. Sage CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

| | |
|---|---|
| THE PEOPLE,<br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>CHRISTOPHER JEFFREY SAGE,<br>　　　Defendant and Appellant. | C101064<br><br>(Super. Ct. No. 23F02330) |

　　　A jury found defendant Christopher Jeffrey Sage guilty of second degree robbery and two counts of assault.  The trial court found true defendant had two prior strikes and two prior serious felony convictions and sentenced defendant to prison for a term of 25 years to life, plus 10 years for the prior serious felony conviction enhancements.  On appeal, defendant contends the trial court violated his constitutional rights by allowing the prosecution to introduce a new theory of liability for robbery at the end of trial without giving the defense sufficient notice.  We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

　　　On January 30, 2023, A.W. was working as the manager of a large store when she saw defendant in an aisle putting items in his own bag, instead of a basket that shoppers usually use, and suspected him of shoplifting.  A.W. confronted defendant and told him to return the items and leave the store.  A.W. followed defendant towards the exit and

1

tried to retrieve the merchandise from the bag. Defendant dropped items as A.W. pulled at the bag. Defendant swung his right hand towards A.W.'s face.

Defendant walked out of the store. A.W.'s coworker C.B. came to make sure A.W. was all right. A.W. was picking up the items defendant had dropped when he came back into the store. Defendant lunged at A.W. and C.B. with a barbecue fork. Defendant then stood outside the store talking about how life is unfair and things should be given away free.

Two officers with the Redding Police Department received calls regarding a robbery at the store. One officer was shown a photograph of defendant at the store and realized he had seen him as the officer was coming to the area. The officer located defendant and detained him. A search of defendant found unopened tuna packets of a brand sold at the store and a barbecue fork. The officer transported defendant to the store where A.W. identified him as the person who had stolen items.

In September 2023, defendant was charged with second degree robbery of A.W. and two counts of misdemeanor assault of A.W. and C.B., respectively. It was further alleged that defendant had three prior strikes and three prior serious felony convictions. As circumstances in aggravation, the information alleged defendant used a weapon, engaged in violent conduct that indicates a serious danger to society, had prior convictions that are numerous or of increasing seriousness, and committed the crime while on probation or parole.

The jury found defendant guilty of the robbery and assault charges and found true that defendant used a weapon and engaged in violent conduct indicating a danger to society. In a bifurcated proceeding, the trial court found true (1) two of the prior strikes and two prior serious felony convictions, (2) that defendant's prior convictions were numerous or of increasing seriousness, and (3) that he committed the current offense while on probation or parole. The trial court sentenced defendant on the robbery count to 25 years to life plus 10 years for the serious felony enhancements and imposed and

stayed 180-day jail sentences on the misdemeanor assault counts.[1]  The court awarded defendant 508 days of custody credit and ordered defendant to pay a $300 restitution fine; a $300 parole revocation fine, suspended unless parole is revoked; and various other fees.

Defendant appeals.

DISCUSSION

Defendant contends allowing the prosecution to introduce a new theory of culpability for robbery at the end of trial deprived defendant of his constitutional right to effective assistance of counsel and a fair trial.  We disagree.

I

*Background*

After both parties had rested, on the morning of September 21, 2023, the trial court conferred with counsel on proposed jury instructions.  During the conference, defense counsel argued that under *People v. Estes* (1983) 147 Cal.App.3d 23 (*Estes*),[2] the robbery was complete when defendant walked out of the store and swung his hand toward A.W., who was trying to stop him.  Counsel maintained at that point defendant "reached what would be considered a point of safety.  He's not being pursued.  Taking is completed.  That is done.  [¶]  So when he comes back into the store, when it would involve … someone else that intervenes, that being [C.B.], it's a completely separate act.  That's why it's charged the way it is.  It's not a robbery of [A.W.] and [C.B.]"

---

[1]  At the sentencing hearing, the trial court also terminated another case and imposed concurrent jail sentences in two other cases.

[2]  In *Estes*, the court held:  "The crime of robbery is a continuing offense that begins from the time of the original taking until the robber reaches a place of relative safety." (*Estes, supra*, 147 Cal.App.3d at p. 28.)  The court explained:  "The crime [of robbery] is not divisible into a series of separate acts.…  The events constituting the crime of robbery, although they may extend over large distances and take some time to complete, are linked by a single-mindedness of purpose." (*Ibid*.)

The prosecutor responded, "[T]he second acts certainly help the [prosecution]'s burden of proof regarding the robbery. [Defendant]'s attempts to deter them from making any further efforts to recover their property is part of the course of conduct in this case."

The trial court asked the prosecutor if he intended to argue in closing "a continuous course of conduct." The prosecutor confirmed that he intended to, based on A.W.'s testimony. Defense counsel countered that A.W.'s testimony was clear that the robbery was complete when defendant left the store. The trial court advised it would review *Estes* and any other case counsel wished to present on the issue.

In the afternoon session on September 21, 2023, the trial court stated it had reviewed *Estes*. Defense counsel cited a number of additional authorities that he argued supported a finding that defendant had reached a place of temporary safety when he exited the store. After considering this authority, the trial court concluded the evidence supported a continuous course of conduct with regard to the robbery count. The court nonetheless invited the parties to submit further briefing with respect to continuous course of conduct.

On September 25, 2023, defense counsel submitted a brief arguing that introduction of a continuous course of conduct theory (1) subverted the preliminary hearing; (2) deprived defendant of notice, due process, and fundamental fairness when presented at such a late stage; (3) was legally flawed because force or fear must be used to complete a taking; and (4) no legal authority permitted the prosecutor to use a defense instruction to explain the actions of a victim.

After further argument from counsel on the afternoon of September 25, 2023, the trial court ruled that since no continuous course of conduct theory was presented or discussed at the preliminary hearing, the court's ruling on jury instructions could not subvert the preliminary hearing. The court then found that the facts and evidence were

not consistent with defendant reaching a place of safety but rather supported the prosecution's argument of a continuous course of conduct.

II

*Analysis*

We review de novo defendant's claim of inadequate notice, which "involves questions of constitutional law and mixed questions that are predominantly legal." (*People v. Quiroz* (2013) 215 Cal.App.4th 65, 70 (*Quiroz*).)

In *Quiroz*, the court held that "notice of a new theory [is] constitutionally sufficient when the defendant is further alerted to the theory by the evidence presented at the preliminary hearing [citations], or by the [prosecution]'s express mention of that theory before or during trial sufficiently in advance of closing argument. [Citations.] What due process will not tolerate is the [prosecution] affirmatively misleading or ambushing the defense with [its] theory." (*Quiroz*, *supra*, 215 Cal.App.4th at pp. 70-71.)

It is not clear whether defendant was alerted to the prosecution's theory by the evidence presented at the preliminary hearing. The People argue that defendant had sufficient notice of their "implicit theory from the preliminary hearing evidence and well-established law pertaining to robbery as a continuing crime." The People refer generally to testimony by a police officer at the preliminary hearing, in which the officer stated A.W. told him that defendant left the store, returned a few seconds later, and attempted to hit store employees with an object. The officer also testified he reviewed surveillance video showing these events. While we do not disagree with the People's contention and the trial court's conclusion that this evidence supported an inference that defendant's assault after he left the store and returned was "part of the continuing crime of robbery," we agree with the trial court that nothing in the preliminary hearing transcript suggests this theory. Rather, this evidence was offered only to support a charge of assault with a deadly weapon.

5

On the other hand, nothing in the record indicates the prosecutor misled or sought to ambush defendant with a new theory. Defendant claims, "[T]he defense was effectively ambushed and deprived of fair opportunity to prepare a defense by the prosecution's late change in theory." But defense counsel in arguing inadequate notice below appropriately conceded at the hearing on the afternoon of September 25 that he was not asserting that the prosecutor "ha[d] crossed into an ambush phase." Assuming that the prosecutor first announced his intent to employ a continuous course of conduct theory at the jury instruction conference on the morning of September 21, by closing arguments on September 26 the defense had had several days to prepare to address this theory, had argued against it multiple times, and filed a brief at the trial court's invitation.

Defendant emphasizes that the parties had rested when the prosecution raised a continuous course of conduct theory. But defendant "could have moved to reopen the taking of evidence so as to present a defense against [the theory]." (*People v. Memro* (1995) 11 Cal.4th 786, 869, overruled on another ground in *People v. Gaines* (2009) 46 Cal.4th 172, 181, fn. 2.) Instead, defense counsel proceeded to closing arguments, where the prosecutor argued continuous course of conduct and defense counsel argued that any potential robbery was complete when defendant exited the store and thus the prosecution failed to prove defendant used force or fear.

Defendant relies on *Sheppard v. Rees* (1990) 909 F.2d 1234, a Ninth Circuit case that reversed a state murder conviction on a habeas corpus petition where the prosecutor requested an instruction on a new theory that the Ninth Circuit said "ambushed" the petitioner. (*Id*. at pp. 1235, 1237.) In *Sheppard*, the prosecution charged the petitioner with deliberate and premeditated murder. (*Id*. at p. 1235.) After the evidence closed and the jury instructions were settled, the prosecutor requested an instruction on felony murder, which the trial court granted. (*Id*. at pp. 1235-1236.) The Ninth Circuit said, "[T]he prosecutor 'ambushed' the defense with a new theory of culpability … in the form

6

of unexpected jury instructions permitting the jury to convict on a theory that was neither subject to adversarial testing, nor defined in advance of the proceeding." (*Id*. at p. 1237.)

*Quiroz* cites *Sheppard* for the principle that "[w]hat due process will not tolerate is the [prosecution] affirmatively misleading or ambushing the defense with [its] theory." (*Quiroz*, *supra*, 215 Cal.App.4th at p. 71.) *Sheppard*, however, is not binding on this court. (*People v. Bradley* (1969) 1 Cal.3d 80, 86.) Moreover, "California and Ninth Circuit decisions have uniformly viewed *Sheppard* narrowly and limited it to its facts." (*People v. Lucas* (1997) 55 Cal.App.4th 721, 738.) After *Sheppard*, the Ninth Circuit held no "ambush" occurred when felony-murder instructions were mentioned for the first time at an initial instructions conference, so long as trial evidence alerted the defense to the applicability of the theory, and the defense had two days to prepare oral argument. (*Morrison v. Estelle* (1992) 981 F.2d 425, 428-429.) Here, we agree with the trial court that evidence defendant returned a few seconds after leaving the store to lunge at A.W. with a weapon supported a continuous course of conduct theory. (*Estes*, *supra*, 147 Cal.App.3d at p. 28.) Defendant had several days to prepare to counter this theory in closing argument.

We conclude defendant was not deprived of constitutionally adequate notice, and, therefore, not deprived of effective assistance of counsel. (See *Morrison v. Estelle*, *supra*, 981 F.2d at p. 429.)[3]

---

[3] Defendant argues the trial court's error was not harmless under the standard stated in *Chapman v. California* (1967) 386 U.S. 18. The People respond that any error was harmless under the test articulated in *Quiroz*, *supra*, 215 Cal.App.4th at page 71. Having found no deprivation of rights, we need not address harmless error, including the appropriate standard for determining harmless error.

DISPOSITION

The judgment is affirmed.

/s/
ROBIE, J.

We concur:

/s/
HULL, Acting P. J.

/s/
WISEMAN, J.*

---

*       Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.